EXHIBITS TO DECLARATION OF SABRINA P. SHROFF, ESQ.

EXHIBIT A

Heicklen22

THE JUDGE WILL INSTRUCT THE

JURY THAT IT MUST UPHOLD THE

LAW AS HE GIVES IT.

HE WILL BE LYING.

THE JURY MUST JUDGE THE LAW

AS WELL AS THE FACTS.


JURIES WERE INSTITUTED TO

PROTECT CITIZENS FROM THE

TYRANNY OF GOVERNMENT.

IT IS NOT THE DUTY OF THE JURY

TO UPHOLD THE LAW.

IT IS THE JURY'S DUTY TO SEE

THAT JUSTICE IS DONE.

EXHIBIT B

Heicklen23

**Can I even talk about "jury rights" with fellow jurors?**

Certainly. You can talk about anything you want to during your deliberations. It is certainly appropriate to discuss the role of the jury, its history, the rights and powers of jurors, but you may be moving onto thin ice if you attempt to document your discussion with written materials, including this brochure. If nothing else, you may find yourself in violation of the usual instruction by the judge not to refer to any "outside" materials when deliberating.

**Back to America's founders. What exactly did they say?**

Our third president, Thomas Jefferson, in 1789 wrote a letter to Thomas Paine, saying, "I consider trial by jury as the only anchor yet devised by man by which a government can be held to the principles of its constitution." [8]

Our second president, John Adams, in 1771 said about the trial juror, "It is not only his right, but his duty ... to find the verdict according to his own best understanding, judgment, and conscience, though in direct opposition to the direction of the court." [9]

John Jay, the first U.S. Supreme Court Chief Justice, in 1794 said that jurors have a right "to determine the law as well as the facts in controversy." [10]

From history and experience, the Founders were well aware that citizen juries would be the best protection against damage to our unalienable rights. That's why they insisted on trial by jury in the Declaration of Independence, Constitution, and Bill of Rights (trial by jury gets more mentions than any other right).

In fact, many of the rights and freedoms that they treasured, and that we still treasure today (free speech, religious freedom, peaceable assembly, free trade, property rights, freedom of the press,) had been identified and established by courageous juries in the first place, both in England and her American colonies, where (sometimes at great cost to their own safety and liberty) jurors had refused to enforce what they felt were unjust laws restricting what they saw as "natural rights". Juries exist to protect fellow citizens from government tyranny.

**Could you give me some examples?**

Perhaps the landmark case was the 1670 trial of William Penn. Our rights to freedom of speech, religion, and peaceable assembly were established when a London jury refused to convict him for violating the Conventicle Act, which made Anglicanism the official religion of England. Penn was apprehended delivering a Quaker sermon on a street corner, after the police had locked the doors to the meeting house. His jury could see no harm in what he did, and refused to convict even after being locked in the deliberation room without food, water, or toilet facilities for days, and told to find him guilty. Even then, they were fined for their verdict and those who didn't pay were jailed. But when the highest court in England released them, the rights they had

protected were on their way to becoming constitutional law–they appear today in our First Amendment.

In 1735, in New York Colony, John Peter Zenger's acquittal by jury established freedom of the press. He was accused of "seditious libel" for printing true stories and editorials about corruption in the colonial governor's office. The court told the jury "Truth is no defense"–but the jury told the court "Not guilty", even though there was plenty of evidence of Zenger's "guilt". The jury brought in a "conscientious verdict" in the face of a bad law.

**So, what happened between those days and the present?**

Certain big-business interests saw their influence and profits cut by juries which refused to enforce laws those interests had spent a lot of money lobbying the government to pass (especially the laws which made it illegal for workers to strike). When men with ties to these groups came to constitute a majority of the membership on our Supreme Court in the late 1800s, they made the decision which to this day allows judges to try to keep the power of nullification secret from juries. [11]

Though our government only rarely admits it [12], the power still exists, secret or not. That is why a "fully informed jury" movement is underway–to tell you the secret the courts will not. It's a secret that lawyers, for fear of being punished by judges, dare not tell.

In summary, the secret is merely this: you, the juror, are the most powerful person in the courtroom because you alone have the last say on both the law and the evidence. If you acquit the defendant in a criminal case, that ends it. The defendant cannot be tried again for the same crime. This is the essential power that we citizens must have if we are to retain control over our government servants, so that no matter what actions the government makes illegal, it is we, not they, who can decide whether or not to apply the law.

AJI/FIJA urges you to use your awesome power wisely, to promote liberty and justice, and to guide the democratic process.

**I have more questions. Does AJI/FIJA have more answers?**

Yes. We'll mail a free Jury Power Information Kit ("J-PIK") to you if you call 1-800-TEL-JURY and tell us where to send it. The J-PIK has detailed information on what to do if you're called for jury service, or you're going to face a trial by jury, or want to know more about the history of the doctrine of jury nullification.

For a rich source of more information, please visit our web site at www.fija.org. These sites contain a huge list of readings, downloadable documents and masters. Also on the web sites are lists of contacts for the many independent state and local-level jury rights groups that have formed around the country, so if you want to get actively involved in educating fellow citizens about their rights and powers as jurors, you should be able to find someone fairly nearby who can help you get started.

**If I can't get actively involved, what can I do?**

We know many people are very busy. We can always put a contribution from you to good use, and remember that we are a 501 (c) 3 for tax purposes. And when you're done reading this brochure (and after the trial, if you're a juror), give it to a friend, co-worker, or relative in case he or she ever needs to refer to it, or wants to call for a J-PIK, or get in touch with FIJA headquarters, or find some local jury rights activists.

Thank you for taking the time to read this brochure. If you're ever fortunate enough to be empaneled on a jury, here's hoping that the information it contains helps you make a decision you can be proud of!

[1]   Brandborg v. Lucas, 891 F.Supp.353 (E.D.Tex. 1995)
[2]   U.S. v. Watts_U.S._1 17 S.Ct.633, 136 L.Ed.2d 544 (1997)
[3]   U.S.A. v. Thomas, et al., 116 F.3d 606 (2nd Circ., 1997); U.S. App. Lexis 13852
[4]   Sparf and Hansen v. U.S., 156 U.S. 51 (1895)
[5]   U.S. v. Dougherty, et al., 473 F.2d 1113, 1130 (1972)
[6]   David C. Brody and Craig Rivera, "Examining the Dougherty 'All Knowing Assumption': Do Jurors Know About Their Power to Nullify?", 33 Criminal Law Bulletin 151 (1997)
[7]   U.S. v. Grace, 1983, 461 U.S. 171, 177, 103 S. Ct. 1702, 1707, 75 .2d 726 (1983)
[8]   Julian P. Boyd, The Papers of Thomas Jefferson, (New Jersey: Princeton University Press, 1950), vol. 15, p. 269
[9]   C.F. Adams, ed., The Work of John Adams, (Boston: Little, Brown & Co., 1856), pp.253-5
[10]   Georgia v. Brailsford, 3 Dallas 1, 4, U.S. (1794)
[11]   Steven E. Barkan, "Jury Nullification in Political Trials", Social Problems 31, 1, (Oct., 1983), pp. 28-46.
[12]   The U.S. Supreme Court periodically acknowledges the political function of the jury as in Duncan v. Louisiana, 391 U.S. 145,155 (1968), wherein Justice Byron R. White wrote, "A right to trial by jury is granted to criminal defendants in order to prevent oppression by the government."

(FIJA Publication:  Q & A Primer for Prospective Jurors)

---

This brochure distributed locally by:

To order reference item #: Q & A
Last Print Date: August 2008



AMERICAN JURY INSTITUTE
Fully Informed Jury Association

P.O. Box 5570  •  Helena, Montana 59604-5570  •  USA
Voice: 406.442.7800  •  Fax: 406.442.9332
Website: www.fija.org  •  E-mail: aji@fija.org
This brochure is not copyrighted and may be reproduced at will.

---



AMERICAN JURY INSTITUTE

FLORUM PARLIAMENTIS LEGES TERRAE

Printed August 2007
Q & A Primer

## A PRIMER FOR PROSPECTIVE JURORS

Provided as a public service by FIJA/AJI, the Fully Informed Jury Association/American Jury Institute, whose goal is to restore the true function of the jury and inform all Americans of their authority and responsibilities as jurors.

This brochure will provide you with brief answers to some common but difficult questions about jury service.

Why read it? First, because jurors are always morally responsible for their verdict. Whoever takes on that responsibility has a right to full information, and it might be yours.

Second, fully informed juries are important because, in addition to providing justice for the accused, trial jurors are expected by the framers of our Constitution to use their verdicts to check, balance and guide all three branches of government. Jurors still have that vital role to play, and they have the power to perform it, but this part of their job rarely is explained to them by the court.

Therefore, you should look at this brochure as a more complete "job description" for jurors than you are likely to get elsewhere. Many jurors who have read it have told us after the trial that it really helped them do a good job in the very stressful task of judging the actions of a fellow human being.

# Q U E S T I O N S   A N D   A N S W E R S

**Must I respond to a summons for jury service?**

Legally, yes. Moreover, FIJA encourages you to show up, even though most court jurisdictions have neither the personnel nor the money it would take to track down those who do not respond. FIJA believes that if more people knew how much good they could do by serving on a jury, and how much power they have to do that good, more of them would happily respond to summonses.

**Must I answer all the questions asked of me on a juror questionnaire, or during the selection process (voir dire)?**

It depends. Most jurisdictions will allow you to answer a question privately, in front of the judge and lawyers only, if you feel uncomfortable about answering it in front of everyone else in the courtroom. If you object to answering a question because you feel it is too personal, you should let the judge know.

In the federal 5th Circuit jurisdiction, because of a recent case[1], your objection will enable the judge to ask the attorney who posed the question to explain why it is relevant to jury selection in the case at hand, or else to withdraw the question.

The idea is to balance your right to privacy against the defendant's right to an impartial jury. So, at least in the 5th Circuit, unless the judge performs this test of "balance" in response to your assertion of your right to privacy, sanctions cannot be used against you for refusing to answer.

If the judge decides that the question is relevant to jury selection, and it is ruled that you must answer, it is still up to you to decide how to answer this or any other question asked. This can be very important, especially if you have moral qualms about the consequences of telling the truth. (Think of the dilemma faced by German citizens when Hitler's secret police demanded to know if they were hiding a Jew in their house.)

A couple of especially hard questions for those who understand and appreciate the political role of the jury are "Will you follow the law as given, even if you disagree with it?", or "Have you read any material on the topic of jury nullification?"

Should you give answers that are likely to get you excused from serving, or say whatever it takes to be selected, so you can do your part to see that justice is served? It's your moral choice.

**Who asks these kinds of questions, and why?**

Questions like these are often asked by prosecutors, sometimes by judges, and are used to disqualify people from serving if they appear to understand their power as jurors, or are aware that the jury has a political role. This makes it easier for the government to get convictions, especially under laws of questionable value and spotty public support–precisely the kinds of laws that our nation's founders wanted juries to question.

The jury selection process has thus become a battlefield in the endless struggle between citizens who want to enjoy, exercise and preserve their individual rights, and a government bent on increasing its control over the citizenry. Purging juries of anyone who disagrees with the law is an easy way to maintain that control, but it violates the main principle of our Constitution–that the people are the master, and the government is the servant.

As jurors, keep in mind that your primary obligation is to serve justice–which may in some instances mean deciding not to provide information which will cost you your chance to serve, and therefore enable the legal professionals to stack the jury with people who don't know their rights.

**Once on a jury, must I use the law as given by the judge, even if I think it's a bad law, or wrongly applied?**

No. You are free to vote on the verdict according to your conscience. You may not increase the charges, but you may choose to vote to acquit, even when the evidence proves that the defendant "did it", if your conscience so dictates.

And if you think the charges are too high, you can ask the judge to tell you about any reduced charges of which you might, in good conscience, be willing to find the defendant guilty.

The same options apply if you learn that the evidence, though true, was gathered in a way that violated the rights of the accused, or if you believe that the government is just trying to flex its muscle by making an example out of the defendant or feel that you were not allowed access to some of the facts of the case, or that victimless crimes should not be punished–or for any other reason you believe that justice will not be served by finding the defendant guilty or liable as charged. You have the power to render a conscientious verdict.

**Is this what is meant by "jury nullification"?**

Yes. When jurors unanimously agree that despite clear evidence showing the defendant acted as accused, conscience requires them to bring in a verdict of not guilty, or guilty only of lesser charges, (or, in a civil case not to award all the damages claimed), their action is known as "jury nullification", or an exercise of "jury veto power".

This power to "do the right thing" and bring in a conscientious verdict, even when the defendant is guilty - by the letter of the law - guilty or liable, is the very backbone of our jury system. Since the Magna Carta, signed by King John in 1215, trial jurors in the English and American systems have had the power and responsibility to resort to conscience whenever they feel a strict application of the law would yield an unjust conviction of, or judgment against, the defendant.

Relatedly, you should never feel that you "owe" it to the government or to a private plaintiff to find guilty the defendant on at least some charge (such as a lesser included offense, or reduced damages) when you really don't believe any harm was done. Remember that prosecutors "multiply charges" these days. This is especially important now that the Supreme Court has decided to allow judges to sentence a defendant "as if" he had committed the worst crime(s) on a list of charges against him, even if the jury acquits him of all but the least serious charges. [2]

Just keep in mind that many people sue for no reason, or for very poor reasons, and sometimes the government prosecutes completely innocent, harmless people. As a juror, you have the power to stop such abuses.

**What about the oath I had to take to "follow the law" as given by the judge?**

You cannot be punished for following your conscience instead of the oath you take or the instructions you are given as a juror. What you and the other jurors decide to do behind the closed doors of the deliberation room is your business.

The whole point of having a jury system is for a group of ordinary citizens to decide upon a verdict or damage award independent of outside influences, including government influence. If jurors could be punished for acting against the wishes of the court, our jury system would actually be trial by government. Part of your job is to think and act independently to keep that from happening.

But caution is called for: a recent U.S. Court of Appeals decision held that if you make known your intention to acquit the defendant regardless of the evidence against him, you may be removed from a jury as "incapable" of being impartial. [3] But that same decision may now protect your right to discuss and judge the law and its application with the other jurors before deciding on a verdict; as long as you also express "reasonable doubt" that the evidence proves the prosecution's case, it cannot be established that you intended to acquit "no matter what". Part of "reasonable doubt" can be that you think the defense is not being allowed to introduce important evidence or that you don't believe the witnesses, including police and informants.

**If no one on the jury agrees with me, do I eventually have to give in and vote for the verdict they want?**

No. You can "hang" the jury with your vote if you feel it is the right thing to do. No one can force you to change your mind, and there is no law or rule of court procedure that says a jury has to reach a verdict. When a jury decides it cannot agree on a verdict, the prosecutor or other plaintiff could always call for another trial.

A series of hung juries in similar kinds of cases sends a valuable message to lawmakers that the public has mixed feelings about the law. It tells legislators either to revise the idea of law that it expresses the will of the people, or to repeal it. Many a bad law has been changed or taken off the books because juries routinely hung when asked to apply it. (Laws which made it a crime to help slaves escape, laws which did not allow working people to go on strike, and laws which prohibited the manufacture and sale of alcohol are a few examples.)

Although hung juries may be expensive to taxpayers and embarrassing to the government, they remain a tried and true way for the people to say "no" to bad law, and to inject true public opinion into the democratic process, exactly as the nation's founders expected them to do.

**Should I share this brochure with my fellow jurors?**

Doing so may be risky. Even though the material in this brochure is well researched and as accurate as we could make it, and even though every American should learn what it has to say, you may find yourself in trouble with the judge if you share it with fellow jurors.

This is because, in 1895, the Supreme Court said that while jurors indeed have the power to judge both law and fact, a defendant could not appeal a conviction or get a new trial because the court had not told the jurors about their nullification power, or would not let the attorneys tell them. [4]

The D.C. Court of Appeals, in 1972, after first praising jury nullification as a check upon bad law, nonetheless supported and extended that Supreme Court decision by holding that jurors didn't "need" to be told about their nullification power: they should already know about it by way of "communication from the total culture" meaning by reading books and magazines, watching TV and movies, or engaging in conversation. [5]

In short, you are "assumed to know" that you can refuse to convict if doing so would violate your conscience or sense of justice. However, a recent study demonstrates that very few people are actually aware of their nullification power. [6] This finding strengthens our argument for telling you, right now; you probably do not "already know", and it's an excellent bet the court will not tell you!

In any event, these court rulings have enabled judges to prevent most participants in a trial from informing jurors of their veto power, and it's not yet established in law whether that includes jurors showing literature to other jurors. (Jury rights activists, such as the person from whom you probably received this brochure, are not participants in the trial, and generally stay outside the courthouse, handing out information to all who will take it, as an exercise of free speech in what the Supreme Court has described as a "free speech zone." [7])

EXHIBIT C

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

July 27, 2011

VIA FACSIMILE
Rebecca Mermelstein, AUSA
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:  United States of America v. Julian Heicklen
     10 Cr. 1154 (KMW)

Dear Ms. Mermelstein:

As you may recall during a prior proceedings on this case I raised before Judge Wood the fact that the instant indictment case does not provide the defendant with notice of the date(s), time(s) and place(s) of the alleged criminal act(s) it alleges in the indictment.

To elucidate, the indictment merely states that the defendant, "attempted to influence the actions and decisions of a grand and petit juror of a court of the United States" by distributing "pamphlets urging jury nullification, immediately in front of an entrance to the United States Court for the Southern District of New York, located at 500 Pearl Street, New York, New York."

Thus, the indictment fails to tell the defendant which days the offending conduct took place. Nor does it provide the time and place of the charged conduct. Would you please provide us with the specific dates, times and place(s) of the charged conduct? Thank you.

Sincerely,

Sabrina P. Shroff
Assistant Federal Defender

cc:  Julian Heicklen

EXHIBIT D

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
*John J. Byrnes*
*Attorney-in-Charge*

June 29, 2011

BY FACSIMILE

Rebecca Mermelstein, Esq.
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York NY 10007

        Re:  **United States v. Julian Heicklen**
             **No. 10 Cr. 1154 (KMW)**

Dear Ms. Mermelstein

     I am writing to supplement our July 27, 2011, letter requesting information about the conduct charged in the instant Indictment. In order for Mr. Heicklen to avoid prejudice and prepare his defense, we request that you provide the defense with the following additional information:

- The content of every writing that Mr. Heicklen is alleged to have distributed during the time period alleged in the Indictment;

  - Whether the recipients of his communications were members of the public, court staff, law enforcement agents, prospective jurors or sitting jurors, and if the latter, whether they were grand or petit jurors;

- The nature of the particular cases that any sitting jurors were hearing, including whether the cases were criminal or civil and, if criminal, the particular charge;

- Whether, if, Mr. Heicklen communicated with a member of grand jury, it voted to indict, and, if he communicated with a member of a petit jury, it voted to convict, acquit, or could not reach a verdict, and;

Rebecca Mermelstein, Esq.                          August 19, 2011
Assistant United States Attorney                          Page 2

Re:   **United States v. Julian Heicklen**
        **No. 10 Cr. 1154 (KMW)**


- For each recipient of a communication, the nature of the "issue,"
"matter," or "duties" that Mr. Heicklen is alleged to have
attempted to influence.



                          Very truly yours,

                          _SPS - SMS_

                          **SABRINA P. SHROFF,**
                          **STEVEN M.  STATSINGER**
                          Assistant Federal Defenders
                          Tel.: (212) 417-8700