```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

        - v -                     :
                                            10 CR 1154 (KMW)
JULIAN HEICKLEN,
                                  :
        Defendant.                :

- - - - - - - - - - - - - - - - - -x
```

### STAND-BY COUNSEL'S REPLY MEMORANDUM IN SUPPORT OF PRO SO DEFENDANT'S PRETRIAL MOTIONS

```
                    FEDERAL DEFENDERS OF NEW YORK, INC.
                    Stand-By Counsel for Defendant Pro Se
                    JULIAN HEICKLEN
                    52 Duane Street - 10th Floor
                    New York, New York  10007
                    Tel.: (212) 417-8736
```

**SABRINA P. SHROFF, ESQ.**
**STEVEN M. STATSINGER, ESQ.**
  Of Counsel

TO:  **PREET BHARARA, ESQ.**
     United States Attorney
     Southern District Of New York
     One St. Andrew's Plaza
     New York, New York  10007
     Attn:, Rebecca Mermelstein, Esq.
          Assistant United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
UNITED STATES OF AMERICA,          :

            v.                     :    10 CR 1154 (KMW)

JULIAN HEICKLEN,                   :

            Defendant.             :
-----------------------------------X
```

### STAND-BY COUNSEL'S REPLY MEMORANDUM

### PRELIMINARY STATEMENT

This Reply Memorandum is respectfully submitted by stand-by counsel, Federal Defenders of New York, Inc., in support of defendant pro se defendant Julian Heicklen's pretrial motions. This Reply Memorandum specifically addresses the government's arguments that: (1) 18 U.S.C. § 1504 does not violate the First Amendment as applied to Mr. Heicklen; (2) the Indictment is not duplicitous; and, (3) the Court lacks the discretion to order a jury trial. For Mr. Heicklen's remaining arguments, the defense respectfully relies on its main brief.

### POINT I

#### SECTION 1504 VIOLATES THE FIRST AMENDMENT AS APPLIED TO MR. HEICKLEN

The government's primary effort to salvage the constitutionality of 18 U.S.C. § 1504 as applied to Mr. Heicklen's conduct derives from Cox v. Louisiana, 379 U.S. 559 (1965). But that case - and, more particularly, the statute the Court upheld -

1

is radically different from this one. In Cox, the court upheld the constitutionality of a Louisiana statute that prohibited "picket[ing] or parad[ing] in or near" a state courthouse with the intent to interfere with, obstruct or influence the administration of judice. Id. at 560.  The Court expressly noted that this statute derived from a federal statute, 18 U.S.C. § 1507, which is nearly identically worded. Id. at 561. But § 1507, which is still on the books, is not the statute under which Mr. Heicklen is charged. And that statute, like the Louisiana provision discussed in Cox, is so different from the statute at issue here, 18 U.S.C. § 1504, that Cox is simply inapposite.

The core activity covered in § 1507 and the analogous state statute discussed in Cox, parading or picketing, is fundamentally different from the activity proscribed by § 1504 - creating a writing or giving one to a juror. And it is that very difference upon which Cox turned - the highly disruptive nature of picketing or parading, as opposed to merely creating or handing out writings. "There can be no question that a State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create." Id. at 562. The need to ensure fair trials permits states to "exclude the influence or domination by either a hostile or friendly mob. ... [M]ob law is the antithesis of due process." But Cox expressly distinguishes the "riotous," id. at 374, conduct of "picketing and parading" from "such a pure form of expression as newspaper comment or a telegram

2

by a citizen to a public official." Id. at 564. The conduct covered by § 1504 - at least as charged in Mr. Heicklen's particular case - is clearly far more like a "pure form of expression" than it is like "picketing or parading" as part of a "mob." The analysis in Cox, then, does not salvage this prosecution.

In fact, Cox actually supports Mr. Heicklen's position, because it expressly notes that states "cannot consistently with our Constitution abridge [freedom of speech] to obviate slight inconveniences or annoyances." Id. at 564. And that is all that can really be said about Mr. Heicklen's conduct, as charged here. The sight of a shabby old man distributing his silly leaflets from the sidewalk outside of a courthouse - two, actually, since the plaza in front of 500 Pearl Street also abuts a rear entrance of a New York State Supreme Court building - is, at its worst, an inconvenience or an annoyance.

There is a final distinction between Cox and this case that is fatal to the government's effort to analogize the two. Cox turned, in at least part, on the state's legitimate need to "protect the judicial process from being misjudged in the minds of the public." Id. at 565. For example, if "demonstrators paraded and picketed for weeks with signs asking that indictments be dismissed," and a judge did so "completely uninfluenced by these demonstrations," there would still be a risk - one that a state can constitutionally minimize - that the public might conclude "that the judge's action

was in part a product of intimidation and did not flow only from the fair and orderly working of the judicial process." Id.  But here, by contrast, the exact opposite is true. The content of Mr. Heicklen's message can only enhance the public's understanding and appreciation of the judicial process, since it advises of a lawful power that jurors are free to exercise, but which they are never told that they have. Accordingly, for all these reasons, Cox does not salvage § 1504, either on its face or as applied to Mr. Heicklen.

Nor should the Court be swayed by any of the other decisions relied on by the government. None is binding, and all are distinguishable. The easiest to distinguish are United States v. Ogle, 613 F.2d 233 (10th Cir. 1979), where the defendant was charged under a different statute, and State v. Holland, 1995 Mont. Dist. LEXIS 929, No. CR-95-53 (November 29, 1995), where the defendant was convicted of trying to influence the members of his own jury.

The government also relies heavily on State v. Springer-Ertl, 610 N.W.2d 768 (S.D. 2000), but that case that does not support the government's arguments, either. There, the defendant, a distraught mother, went to the small town where her son, a juvenile, was to be tried for murder, and plastered it with posters declaring him to be innocent. Id. at 769. The posters also revealed that he had passed a polygraph test, but that the trial judge had declared the polygraph result inadmissible. Id. The mother was convicted of

4

attempting to influence jurors under a South Dakota jury tampering statute, but the judge granted her motion for a new trial, agreeing that the "jury should have been advised on what distinguishes the crime of attempting to influence jurors from protected speech under the First Amendment." Id. at 770.

The South Dakota Supreme Court affirmed, noting that the posters' message "approache[d] fully protected political speech" because it "was couched a public criticism of the government in its handling of a criminal prosecution," and there is "practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." Id. at 770. This is, of course, a pretty fair description Mr. Heicklen's pamphlets. While not discussing any particular current prosecution, they contain a lengthy, and accurate, historical analysis of the topic of jury nullification. Their criticism of modern American courts' treatment of the subject accordingly touches on a very important matter of "governmental affairs." Id.

Thus, contrary to the government's use of it, Springer-Ertl is best seen as a case that actually supports Mr. Heicklen's First Amendment arguments. His message about the role of juries is much more like "protected speech under the First Amendment" than was the mother's message there, since it was not intended to influence the outcome of any particular case.

Lastly, the government cites Turney v. Pugh, 400 F.3d 1197 (9th Cir. 2005), incorrectly claiming that Turney and Mr.

5

Heicklen's case present "remarkably similar" facts. In fact, the two cases are radically different, both on the facts and the law. Most significantly, the petitioner in Turney gave out his juror nullification materials to individuals clearly identified as venire members, and did so inside the courthouse. Id. at 1198. Those facts alone, even in Mr. Heicklen's view, would likely render the application of a jury tampering statute constitutional.

But, regardless, for two other reasons, the legal analysis in Turney has no applicability here. First, the decision makes clear that the petitioner there pursued only an overbreadth challenge to the jury tampering statute under which he was convicted: "In this appeal from the denial of his petition for a writ of habeas corpus, petitioner Frank Turney alleges that the Alaska jury tampering statute under which he was convicted is overbroad in violation of the First Amendment." Id., emphasis added.  But the government has invoked Turney's reasoning in response to Mr. Heicklen's "as applied" challenge. That reasoning is, at best, dicta on this entirely distinct First Amendment problem.

More importantly, however, the legal reasoning in Turney on any issue is of little use here because that case is an appeal from the denial of a habeas corpus petition. This means that all the Ninth Circuit was empowered to consider was whether, when the state court rejected the petitioner's First Amendment challenge to his conviction, its decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." Id.(quoting 28 U.S.C. § 2254(d)). All the court concluded was that the state court decision there did not offend the highly deferential habeas standard of review, see id. at 1205, which is completely different from concluding that the state court decision was substantively incorrect:

> [A]n unreasonable application of clearly established federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than [that which applies on] de novo review. [The habeas corpus statute] thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

Watson v. Greene, 640 F.3d 501, 508 (2d Cir. 2011) (quoting Thaler v. Haynes, 130 S.Ct. 1171, 1173 (2010)), first alteration in original, second alteration added. For these reasons, Turney does not help the government here.

Next, the Court should reject the government's completely unsupported argument that the plaza outside of 500 Pearl Street is not a public forum. That plaza is a public right of way that connects two streets, Worth Street and Pearl Street, and is frequently used by pedestrians to access, or travel between, them. While the government makes much of the barricades and cameras present in the area, it is abundantly clear that those have been

7

installed to protect the area from damage, and not to restrict expressive activity. They are, consequently, irrelevant to the constitutional question at issue here.

And, indeed, the area immediately outside of 500 Pearl Street is the frequent scene of unrestricted expressive activity, as it is often populated by members of the press performing their work without any hindrance at all. This activity includes lawyers, litigants and members of the public speaking with reporters - or each other - and sharing their views on the matters of great public importance that take place within the nearby court buildings each day. The nature of this activity renders the Pearl Street plaza entirely different from the arts complex - Lincoln Center, which comprises theaters, opera houses and a symphony hall - discussed in Hotel Employees & Restaurant Union v. City of New York, 311 F.3d 534 (2d Cir. 2002), and upon which the government hangs its hat.

To the contrary, the Pearl Street plaza is much more like the area described as a public forum in Courtemanche v. G.S.A., 172 F. Supp. 251, 266 (D. Mass. 2001). There, the court found that a "plaza immediately outside" a federal building in Boston was a public forum: the area had a "track record of use for rallies and other expressive activity," was "generally open for public use," and was "more closely akin to a street or sidewalk than to a non-public forum such as an airport." Id. This description is a near-perfect match to the plaza outside of 500 Pearl Street.

Finally, the Court should reject the government's effort to

8

deflect Mr. Heicklen's argument that the charge against him is viewpoint censorship, the most pernicious form speech regulation in First Amendment jurisprudence. "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819, 829 (1995). The "blatancy" of the viewpoint-based discrimination here simply cannot be denied. The Indictment charges Mr. Heicklen with a crime not for distributing leaflets that merely define jury nullification, or leaflets that condemn jury nullification - the government's preferred position - but for distributing leaflets "urging jury nullification," a position that the government has for some reason decided that it does not like. Accordingly, here, the viewpoint discrimination is specifically alleged in the charging instrument, and is too "blatant" for the government to ignore. This renders the government's attempt at censorship invalid per se. "Viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006).

In a futile effort to avoid addressing this flaw in its case, the government attempts re-cast the problem by first characterizing Mr. Heicklen's argument as a selective prosecution claim, and then arguing that Mr. Heicklen has not been selectively prosecuted. Gov't Br. at 23-24. But that argument simply misses the point. A

9

selective prosecution claim derives from the equal protection standards in the Fifth Amendment's due process clause, see, e.g., United States v. Armstrong, 517 U.S. 456, 466 (1996), and has precious little to do with a First Amendment "as applied" challenge, which, given the fundamental right involved, creates a much lighter burden for its proponent. But, that said, selectively prosecuting speech based on its viewpoint does, in all likelihood, violate the Fifth Amendment as well as the First, so even taking the government on its own terms, however spurious they may be, the government should still lose. See, e.g., Arcard v. Cloud Books, Inc., 478 U.S. 697, 707 n.4 (1986) ("Were respondents able to establish the existence of such a speech suppressive motivation or policy on the part of the District Attorney, they might have a claim of selective prosecution.")

In sum, Mr. Heicklen is being prosecuted for pure speech, conducted in a public forum, and only because his message is one with which the government disagrees. It would be hard to imagine a clearer violation of the First Amendment than this. The Indictment against him should accordingly be dismissed.

### POINT II

### THE INDICTMENT SHOULD BE DISMISSED AS DUPLICITOUS

The government agrees that the Indictment against Mr. Heicklen charges him with committing a string of distinct acts - it now identifies eight of them - each of which is alleged to have

violated 18 U.S.C. § 1504, on different occasions over an eight-month period. But the government's insistence that the Indictment is not duplicitous cites only "the Government's view of the defendant's conduct as a single, ongoing scheme to advocate jury nullification to jurors." Gov't Br. at 28. This assertion is so utterly standardless and subjective as to be meaningless. Indeed, if all that it took to satisfy Rule 8 was the government's subjective decision to arbitrarily connect a string of distinct acts, than any such string, however disconnected the individual acts, could be charged in a single count.[1]

There is nothing in Rule 8 that permits the government to simply wave a magic wand and decide that a series of individual acts constitutes a "scheme." And there is no Second Circuit precedent that permits it, either. As noted in Mr. Heicklen's opening brief, the circuit has limited the government's ability to charge distinct crimes in a single count to conspiracies and complex frauds. Unsurprisingly, then, the government cites no case even remotely like this one in support of its idiosyncratic claim, and ignores the ones, such as United States v Bagdasarian, 652 F.3d

---

[1] Illustrations of the preposterousness of the government's notion abound. The government seems to think that if a defendant robbed five banks in five months he could be charged with a single count of bank robbery as long as it was the government's "view" that his "conduct [w]as a single, ongoing scheme" to rob banks. And it would not even stop at crimes that were all the same. Under the government's theory, it could charge a string of completely different and unrelated crimes "as a single, on going scheme" to break the law.

11

1113 (9th Cir. 2011) (defendant who made two threatening statements charged in separate counts for each statement), that contradict it.

The government also ignores, or at least mischaracterizes, Mr. Heicklen's claims of prejudice. For the reasons already outlined in his main brief, requiring him to defend against eight separate crimes subsumed into a single count is unfair, and is particularly so given the sparse discovery. Save for one interaction with an undercover agent, which is not a crime, the government has so far disclosed no evidence to the defense about the recipients of Mr. Heicklen's leaflets. But, as noted in the main brief, the precise contours of his defense will vary depending on whether those recipients prove to be sitting grand jurors, sitting petit jurors, prospective jurors, law enforcement agents, or other members of the public. Forcing Mr. Heicklen to advance a multitude of different defenses to a single count is indeed prejudicial. The Court should accordingly dismiss the Indictment as duplicitous.

## POINT III

### THE COURT HAS THE DISCRETION TO CONDUCT A JURY TRIAL

The government argues that the Court lacks the discretion to conduct a jury trial in this petty offense case. But its reasoning is nothing short of bizarre.

The core of the government's argument is this: there was a long-ago superseded instruction to Magistrate Judges to tell defendants charged with petty offenses that their trials "shall be

conducted as are trials of petty offenses in the district court by a district judge without a jury." Gov't Br. at 40. This, according to the government establishes that Congress has stripped district courts of the discretion to conduct jury trials in petty offense cases. Gov't Br. at 40. The problems with this claim are almost too numerous to cite. But here is at least a partial list:

First, the rule itself has been superseded. Second, the long-dead rule was not an instruction to district judges at all. Third, it was not even a specific instruction to magistrate judges about how to conduct trials; it was only an instruction as to how to allocute arrestees. And finally, the rule did not even say what the government thinks it says. All the rule says is that non-jury trials conducted by magistrates "shall be conducted" in the same manner as non-jury trials before district judges. It does not even come close to saying that district judges are forbidden from conducting jury trials on petty offenses.[2]

The government's confusion over the law is compounded by the fact that it relies only on the superseded Magistrates Rule and not on the current rule, Fed.R.Crim.P. Rule 58(b)(2)(F), which clearly does not stand for the proposition that district courts are forbidden from conducting jury trials in petty offense cases. Rule 58(b)(2)(F) provides that, at the initial appearance, the

---

[2] It is worth pointing out here that the government also opposed a jury trial in United States v. Greenpeace, Inc., 314 F. Supp. 2d. 1252 (S.D. Fla. 2004), but did not appeal when the court granted one.

magistrate judge "must inform the defendant" that he has "the right to a jury trial before either a magistrate judge or a district judge - unless the charge is a petty offense." But this does not in any way take away the right to a jury trial. Putting aside that it is also merely an instruction as to how magistrates should conduct a preliminary allocution, and not a substantive instruction to district judges at all, Rule 58, on its face, does not prohibit jury trials in petty offense cases. It merely instructs that a defendant charged with a petty offense does not have a choice of judges - his case must proceed before a magistrate.[3] It is, in other words, an implementation of 18 U.S.C. § 3401(b), under which defendants charged with petty offenses have no right to elect to be tried by a district judge: "Any person charged with a misdemeanor, other than a petty offense may elect, however, to be tried before a district judge for the district in which the offense was committed."

The government's alternative argument, that the Court should not exercise its discretion if it has it, is equally frivolous. First, it derides Mr. Heicklen's observation that 18 U.S.C. § 1504 is a little used statute, Gov't. Br. at 45-46, then cites but nine federal cases invoking that section or its predecessor since the beginning of reported decisions. In fiscal 2010 there were 83,946

---

[3] That the Rule might also be read in a different way is immaterial. That would simply make it ambiguous, and the Court would have to construe it in Mr. Heicklen's favor under the rule of lenity.

14

defendants sentenced in federal courts. http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/Table02.pdf. In fiscal 2009, there were 81,382. http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2009/Table02.pdf. A statute invoked only nine times in even the past two years should legitimately be characterized as "little used." That the government can only point to nine prosecutions under the statute in the past 200 years makes its argument frivolous.

More generally, and as detailed more thoroughly in Mr. Heicklen's main brief, the overtly political nature of this prosecution makes it particularly suitable for a jury trial, given the jury's unique role as a bulwark against governmental oppression. See, e.g., Lewis v. United States, 518 U.S. 322, 335 (1996)(Kennedy, J., concurring).

Accordingly, for these reasons, as well as those advanced in Mr. Heicklen's main brief, the Court both can and should conduct a jury trial in this case.

**CONCLUSION**

For the reasons advanced in Points I, II and III, of Mr. Heicklen's main brief and Point I and II of this Reply Memorandum, the Indictment against Mr. Heicklen should be dismissed. For those advanced in Point IV, of Mr. Heicklen's main brief, the Court should order the government to file a bill of particulars. And for those advanced in Point V of Mr. Heicklen's main brief and Point III of this Reply Memorandum, the Court should grant Mr. Heicklen a jury trial.

Dated:    New York, New York
          November 21, 2011

                              Respectfully submitted,
                              Federal Defenders of New York, Inc.

          By:     _____/s/_____
                  **Sabrina P. Shroff, Esq.**
                  **Steven M. Statsinger, Esq.**
                  Federal Defender Division
                  Stand-By Counsel for
                  Pro Se Defendant
                  **JULIAN HEICKLEN**
                  52 Duane Street - 10th Floor
                  New York NY 10007
                  Tel.: (212) 417-8736